[Civ. No. 23822.   Second Dist., Div. Three.   Dec. 28, 1959.]

MARIE SPARKS, Appellant, v. ALLEN NORTHRIDGE MARKET (Individual's Fictitious Name) et al., Defendants; LLOYD ALLEN, Respondent.

696

Morton J. Salsberg for Appellant.

Robert A. Cushman and Henry E. Kappler for Respondent.

VALLÉE, J.—Appeal by plaintiff from a judgment for defendants notwithstanding the verdict in an action for damages for personal injuries.

Defendant Lloyd Allen was the owner of a retail supermarket in Northridge. It is conceded plaintiff was an invitee in the market. The complaint alleged that on May 27, 1957, defendant "negligently, carelessly and unlawfully placed and stacked its merchandise in such manner as to cause the same to fall on and about Plaintiff's right foot while she was in said market."

On the day of the accident there were about 30 cartons of root beer stacked at a corner of two aisles. One of the aisles ran east and west; the other, north and south. The cartons were "sort of" wrapped around the corner of the two aisles. They were stacked five high right up from the floor. The floor was cement. Each carton was about 10 inches high, and contained eight bottles filled with root beer. The cartons were of cardboard; they were open; the sides came up 2 or 3 inches; the front came up about 4 inches; about 6 inches of each of

the four front bottles were exposed. The cartons had been stacked by a sales-driver of Hires Company at the direction of defendants. The root beer was on display. The display was done once or twice a year. It was "a promotional deal." Hires root beer is a carbonated drink under high pressure. The customers helped themselves to the root beer in the stacked cartons. When one or more bottles were sold they were replaced.

A rough sketch of the layout, found in respondent's brief, is reproduced:*

Customers use pushcarts in which to carry their purchases. The pushcarts are up to 18 inches wide. There is a turnover of about 25 pushcarts used by customers each year. They are serviced twice a year. The "public treats them pretty rough."

Plaintiff Mary Sparks testified: On May 27, 1957, I entered the market, went through a turnstile, took a pushcart, and proceeded easterly down an aisle. I was going to the back to the refrigerator to get some milk. As I was making the turn at the intersection of the east and north aisles, another lady was coming north down the aisle which runs north and south in front of the refrigerator. She was coming toward me on my right from in front of the milk counter, and there were some men putting up a nut display. I wanted to go around the corner. I backed up a ways to make room for the lady coming towards me "to get by with the men standing there with the—displaying the nuts." I moved backward when I saw her coming. I pulled my cart back. It hit the root beer bottles. There was an explosion. Glass went in and out of my foot. I was pulling the cart back when it struck the root beer bottles. The right-front wheel of the cart hooked on to the cartons. I do not remember whether I had seen the stacks there. I knew the display was there because I had seen it a couple of days before. The egg counter prevented me from seeing the root beer cartons as I approached them. The root beer cartons were stacked on the north and east sides of counter 8. As I recall, they were stacked from the floor six high and four wide on each side. Each carton held eight bottles. The wheels on the cart I was pushing were rather wobbly. I had trouble keeping it straight. All I had in my shopping cart was my purse.

Neil Sparks, plaintiff's husband, testified: I walked into the store right after the accident happened to see the cause

*See following page for sketch.

The numbers "8" and "9" represent counters.

of the injury. I saw root beer bottles stacked up five high, partially in the aisle, on both the north and east sides. The stacks were close to 3 feet wide on each side. There was nothing separating the layers of the root beer bottles.

There was evidence that one bottle out of the second carton up fell and hit the floor; it exploded into about a dozen pieces; and that the carton was in the stack on the northeast corner.

Defendants' motion for a directed verdict was denied. The

jury returned a unanimous verdict in plaintiff's favor for $2,500 damages. Defendants' motion for judgment notwithstanding the verdict was thereafter granted and judgment for defendants entered. Plaintiff appeals.

██ It is hardly necessary to say that if inferences can reasonably and fairly be deduced from the evidence which sustain the allegations of the complaint it is error to grant a judgment notwithstanding the verdict. A motion for judgment notwithstanding the verdict should be granted only if it appears from the evidence and the reasonable inferences therefrom, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. (28 Cal.Jur.2d 678, § 45.) ██ The rules governing a motion for judgment notwithstanding the verdict are the same as those applicable to the determination of a motion for a judgment of nonsuit and for a directed verdict. (*Voorheis* v. *Hawthorne-Michaels Co.*, 151 Cal.App.2d 688, 697 [312 P.2d 51]; *Schramko* v. *Saulter*, 146 Cal.App.2d 549, 551 [303 P.2d 1061].)

██ Negligence may be established by circumstantial evidence, which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts. ██ A plaintiff relying on circumstantial evidence does not have to exclude the possibility of every other reasonable inference possibly deriving from the evidence. (*Sanders* v. *MacFarlane's Candies*, 119 Cal.App.2d 497, 500 [259 P.2d 1010]; *Johnson* v. *Nicholson*, 159 Cal.App.2d 395, 405 [324 P.2d 307].) We must assume the truth of plaintiff's evidence and every inference of fact which reasonably may be drawn therefrom.

██ The law imposes on the owner-operator of a public market the duty of exercising ordinary care and prudence to keep the aisles and passageways, in and through which by their location and arrangement a customer in making purchases is induced to go, in a reasonably safe condition so as not to unnecessarily expose him to danger or accident. (*Neel* v. *Mannings, Inc.*, 19 Cal.2d 647, 652 [122 P.2d 576]. See *Winn* v. *Holmes*, 143 Cal.App.2d 501, 503 [299 P.2d 994].)

██ It is the duty of storekeepers to keep the floors of their premises safe for those who must pass over them in the transaction of their business. The fact that the attention of persons who visit public markets is attracted by the display of the wares offered for sale and more or less absorbed by the transactions which they have in mind would seem to increase the

necessity of exercising care to the end that the floor spaces and aisles allotted to the use of customers should be made safe and kept fit for such purpose. ''It is the rule in California that the keeper of a public place of business is bound to keep his premises and the passageways to and from it in a safe condition, and must use ordinary care to avoid accidents or injury to those properly entering upon his premises on business.'' (*Tuttle* v. *Crawford*, 8 Cal.2d 126, 130 [63 P.2d 1128].)

The jury could reasonably have found from the evidence that: cartons with eight bottles of root beer in each carton were stacked five cartons high in the aisles on the cement floor; the cartons were open; the bottles were under heavy pressure and highly explosive; there were no dividers between the cartons; the cartons were stacked in a position where they were likely to be hit by a pushcart 18 inches wide; the pushcart provided plaintiff was wobbly and difficult to control; customers shoving pushcarts used the aisles to buy staples and other products. It was for the jury to determine whether the condition was one of reasonable safety or, in other words, whether defendants had exercised ordinary care under the circumstances. The jury could have reasonably found that defendants were negligent. (*Van Rennes* v. *Southern Counties Gas Co.*, 44 Cal.App.2d 880 [113 P.2d 238].)

Defendants assert that if they were negligent, their negligence was not as a matter of law a proximate cause of plaintiff's injuries. The point is wholly without merit. Whether there was a causal connection between defendants' negligence and plaintiff's injuries was a question of fact for the jury. Where different inferences may reasonably be drawn from the same evidence, the decision must be left to the triers of fact. Want of proximate cause does not exist as a matter of law unless the only reasonable hypothesis is that such want exists and reasonable or sensible men could have drawn that conclusion and none other. Before it can be held as a matter of law that want of proximate cause exists, the evidence must point unerringly to that conclusion. (*Traylen* v. *Citraro*, 112 Cal.App. 172, 175 [297 P. 649]; *Rovegno* v. *San Jose Knights of Columbus Hall Ass'n*, 108 Cal.App. 591, 595, 596 [291 P. 848].) It seems too clear for discussion that the jury could have reasonably concluded that defendants' negligence was the proximate cause of plaintiff's injuries.

The contention that as a matter of law plaintiff was contributively negligent cannot be upheld. Contributory negligence is ''not established as a matter of law unless the only

reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion." (*Anthony* v. *Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826], and cases therein cited; *cf. Lindsey* v. *De Vaux*, 50 Cal.App.2d 445 [123 P.2d 144]; *Stockwell* v. *Board of Trustees*, 64 Cal.App.2d 197 [148 P.2d 405].) Whether plaintiff was negligent in striking the push-cart against the stacked root beer cartons is a question about which there might well be a division of opinion among average persons, but it certainly cannot be said that the weight of opinion would so strongly preponderate on the side of negligence on the part of plaintiff as to take the question out of the realm of fact and transport it into a question of law. Whether plaintiff exercised ordinary care in operating the pushcart was for the jury.

We conclude that the trial court was in error in determining there was no substantial evidence to support the verdict.

The judgment appealed from is reversed and the superior court is directed to enter judgment on the verdict.

Shinn, P. J., and Ford, J., concurred.