[Civ. No. 8509.   Third Dist.   Feb. 18, 1955.]

WALTER W. WOODARD, Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION et al., Defendants; MERCHANTS' NATIONAL REALTY CORPORATION (a Corporation), Appellant.

*Assigned by Chairman of Judicial Council.

Mannon & Brazier for Appellant.

Burke & Rawles and Wayne P. Burke for Respondent.

FINLEY, J. pro tem.*—This appeal is by defendant Merchants' National Realty Corporation from a judgment rendered by the court sitting without a jury in favor of plaintiff and against said defendant alone, in which damages were awarded for injuries sustained by plaintiff when he stumbled and fell over a concrete curbing between a sidewalk in the city of Ukiah, Mendocino County, California, and an adjoining parking lot. The trial court held that there was no liability on the part of defendant Bank of America and said defendant is not involved in this appeal.

Appellant owns a building in the city of Ukiah which fronts to the west on School Street. The lot or strip of land on which it sets runs in an easterly and westerly direction the full width of the block terminating at its easterly end on State Street which is also United States Highway 101 through Ukiah. The building occupies only the westerly portion of

---

*Assigned by Chairman of Judicial Council.

the lot, leaving the easterly portion free of any structure. This easterly portion is covered with concrete and is used as a parking lot, which borders along State Street for a distance of 90 feet. Marking the northerly and southerly 20-foot portions of the boundary line between this lot and the sidewalk on State Street there are concrete curbings about 6 inches high, 6 inches wide and of the same general color as the concrete surrounding. On the center 50 feet of the boundary line between these curbings the concrete covering of the lot is flush with the sidewalk and is used as a means of ingress and egress for automobiles using the parking lot. Iron pipe posts are set in or near the ends of the concrete curbing on each side of this 50-foot opening and at times a chain is stretched across to prevent the passage of automobiles. Automobile parking spaces have been marked off by painting white parallel stripes on the two opposite sides of the lot between the concrete curbings and the rear line of the building so that automobiles using the lot are parked side by side along the north and south sides between these curbings and a line along the rear of the building.

The southerly portion of the building on the lot is occupied by the Bank of America and the northerly portion by Berman's Haberdashery Store. As rear openings from this building a double door leads from the Bank of America and a single door from Berman's store onto the parking lot. Above the latter is a fairly large and rather ornate sign reading "BERMAN's." Also at prominent and easily viewable places on the parking lot are rectagular white signs on which the following is printed in black letters: "For your convenience—30 minutes free parking—While banking—Bank of America." "Free parking while banking, Bank of America customers only, users use it at their own risk." "Bank of America customer parking." Prior to the accident in question respondent had seen these signs and was aware that they were there.

The lease between Berman's and appellant is in evidence, but no mention is made therein concerning Berman's right to use the parking lot. The only testimony in the record is that Bank of America had exclusive right to the use of the lot while Berman's store had none. But the rear door from Berman's store opening onto the lot and the ornate sign over the door were plainly visible from any point on the parking lot and by those on the sidewalk and in automobiles on the highway, passing by.

On a Saturday afternoon at about 3 or 3:30 respondent entered Berman's store by the front entrance on School Street for the purpose of contacting Mr. Berman. Upon being advised that he was at the Maple restaurant which is located north of the parking lot on State Street, respondent left the store by the rear door, and walked across the parking lot to the northeast corner. There he stumbled over the concrete curbing dividing the parking lot from the sidewalk and fell to the sidewalk, breaking both his arms. He testified he did not see the curbing.

Three questions are presented by appellant on this appeal: 1. Was plaintiff as a pedestrian crossing the parking lot an invitee or a bare licensee? 2. Was the parking lot, due to the existence of the concrete curbing, in such a dangerous or defective condition as to constitute an actionable hazard for which this appellant would be responsible in damages based upon negligence in the event of injury to an invitee or licensee proximately caused by the existence of the concrete curbing with nothing in the way of difference in color or other safeguard to distinguish it from the surrounding area? 3. Was respondent himself guilty of contributory negligence?

The difference in obligation owing to an invitee and mere licensee has been recently discussed by this court in *Laidlaw* v. *Perozzi, ante,* p. 169 [278 P.2d 523]. We cannot say that here respondent was not an invitee upon the premises, for, although nothing in the record clearly establishes just what legal right Berman's store or its customers had with respect to use of the parking lot, the fact remains that appellant permitted the existence and use of a rear door from the store to the parking lot and also the ornate sign reading ''Berman's'' over this door. From all that appears, we can attribute no other purpose to the existence of the door and the ornate sign over it than that they are intended as an invitation to the public to use the door in connection with patronizing Berman's store, and it could not be so used without entering or leaving it by way of said parking lot. It might be argued that the existence and context of the Bank of America signs would negative this ostensible invitation, but the public cannot be called upon to resolve any such conflicts in appearance. We cannot say as a matter of law that under the circumstances respondent was not an invitee on the premises. The trial court found that he was a business invitee of Berman's and of appellant, which finding is supported by the evidence. Beyond this determination we

are not required to go. ■ It was incumbent then upon appellant to maintain the premises in a reasonably safe condition for use by respondent and other invitees. (Rest., Law of Torts, § 189; *Spore* v. *Washington,* 96 Cal.App. 345 [274 P. 407]; *Hassell* v. *Denning,* 84 Cal.App. 479 [258 P. 426]; *Bock* v. *Hamilton Square Baptist Church,* 219 Cal. 284 [26 P.2d 7]; *Harris* v. *Joffe,* 28 Cal.2d 418, 423 [170 P.2d 454].)

■ The trial court found from the testimony and from a personal visit to the premises stipulated to by the parties that the curb as constructed and maintained constituted a hazard to invitees. It also found that respondent was not contributorily negligent. These determinations lie within the province of the finder of fact and unless this court could say as a matter of law that such findings are without adequate support in the evidence they must stand as found by the trial court. We cannot say here that the proof on any essential point is insufficient.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.